IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

CLIFFORD J. NEELY,                    )
                                      )
                 Plaintiff,           )
                                      )
vs.                                   )      Case No. 11-0137-CV-W-ODS
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security.      )
                                      )

## ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her applications for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

## I.  BACKGROUND

Plaintiff was born in January 1966, has an eleventh grade education, and has prior work experience as a foundry worker, restaurant kitchen supervisor, and forklift operator. He filed a claim for benefits under Title II and Title XVI in July 2006, alleging he became disabled on May 1, 2005, due to a combination of heart problems, obesity, and leg pain.

In June 2005 Plaintiff suffered a heart attack and was admitted to St. Luke's Hospital, where he underwent a cathertization and had three stents placed in his heart. R. at 214-15. Later that month, he underwent an arteriogram and an angioplasty, which confirmed that the previous procedure was successful. R. at 186, 216. He was told to quit drinking and smoking, and Plaintiff reported plans to return to work the following week.

His next appointment was set for August 2005. R. at 243. However, he did not return to the cardiologist as scheduled, and he next saw a doctor (not the cardiologist)

in December with complaints of knee pain. R. at 194. An MRI performed in January 2006 revealed small joint effusion consistent with myxoid degeneration of the meniscus. The ligaments were intact and there were no other findings of note. R. at 198-99.

In March 2006, Plaintiff visited the cardiology clinic at Truman Medical Center ("TMC") for a follow-up. Overall, his examination was "mildly" abnormal: Plaintiff was described as having a low risk for cardiac death and an intermediate risk of heart attack. The cardiologist concluded Plaintiff was "best managed with aggressive risk-factor modification." R. at 236-37, 312.

Plaintiff underwent a consultative examination performed by an osteopath (Dr. Norman McCarthy) in October 2006. Plaintiff told Dr. McCarthy that he could not work "because if he stands for more than 20 minutes, his left leg goes numb and it starts stinging and wants to give out. Then, he has to sit down. This has been occurring over the last two years and this is due to an injury involving his left hop. He further states that he has trouble with his right thigh with some numbness from time to time." However, Plaintiff produced normal test results, and Dr. McCarthy's examination failed to reveal any limitations in Plaintiff's extremities from an osteopathic standpoint. Dr. McCarthy opined that Plaintiff could stand or walk for two hours at a time and six hours per day and lift up to ten pounds frequently and twenty pounds occasionally. R. at 352-58.

In July 2007 Plaintiff went to the emergency room because his eye had become red. He also reported swelling in his legs, shortness of breath and chest pain, all of which he attributed to having stopped taking his medication. He confirmed that his leg had not swollen before, and the swelling coincided with his not taking medications. Doctors confirmed Plaintiff's suspicion that Plaintiff's problems were due to his failure to take medication – as well as his failure to stop smoking and control his weight. The recommended treatment was for Plaintiff to resume taking medications as directed. R. at 409-10. Plaintiff returned to TMC in August. He had not resumed taking medication as directed and was suffering from unstable angina and congestive heart failure. Consequently, he was admitted. R. at 394-98. He underwent a catheterization later that month, which revealed a 70 percent blockage in a distal marginal artery and 30

Case 4:11-cv-00137-ODS   Document 14   Filed 02/15/12   Page 2 of 7

percent blockage in the right pulmonary artery near one of the stents. Treatment with medication was recommended, and Plaintiff – who was "upset" that surgery was not planned – was encouraged to take his medications as prescribed, consult with a doctor before ceasing any medication, to follow a proper diet, and keep all of his appointments. R. at 375-76, 400-01. In September, he was encourage to also stop smoking. R. at 462-63.

During visits to a nurse practitioner (Martha Bogart) in October 2007, November 2007, and March 2008, Plaintiff reported significant improvement while on medication. In particular, his angina had improved and his hypertension was controlled. Plaintiff continued to be advised to stop smoking. R. at 440, 450, 455-56, 458-60. Later in March 2008, Plaintiff went to the emergency room at TMC complaining of chest and back pain. In contrast to what he had told the Nurse Bogart, Plaintiff reported needing to take nitroglycerin daily. X-rays and an ECG revealed Plaintiff's complaints were not heart-related. R. at 562-66.

Between April 2008 and June 2009, Plaintiff was periodically prescribed anticoagulants. However, he did not always follow his doctor's directions and decided on his own to adjust the dosages. R. at 551, 557. He was encouraged not to do this and to follow his doctor's directions.

In December 2008, Plaintiff told Nurse Bogart that he experienced daily chest pains but was not taking his medications. R. at 517. In February 2009 Plaintiff went to the emergency room at TMC complaining of chest pain. X-rays and other tests revealed nothing amiss and Plaintiff was encouraged to continue taking medications. R. at 487-90, 494, 502-05. In April 2009, Plaintiff's cardiologist observed Plaintiff's coronary artery disease was stable, there were no symptoms of heart failure, and his hypertension was well-controlled. Plaintiff was encouraged to improve his diet and lose weight, and the following month Plaintiff reported that he was walking up to one and one-half miles daily. R. at 475-80.

During the administrative hearing held in December 2008, Plaintiff testified to experiencing chest pains daily, taking nitroglycerin daily, and experiencing arrhythmia "constantly." R. at 24-25. He reported being tired all the time and incapable of walking

3

more than a block and a half.  R. at 26.  He reported that he could stand for no more than fifteen minutes before experiencing pain, being able to sit for no more than twenty minutes before experiencing swelling in his legs, and being able to lift no more than five to ten pounds.  R. at 26-27.

Testimony was elicited from a vocational expert ("VE").  When asked to assume a person of Plaintiff's age and education and work history who is limited to standing or walking two hours a day and sitting six hours a day, the VE testified such a person could only perform sedentary work.  The VE identified jobs Plaintiff could perform, including assembler, order clerk, inspector, and porter.  R. at 36-37.

The ALJ declined to credit Plaintiff's testimony about his leg pain because of the conservative treatment prescribed, the inconsistency with which Plaintiff complained or sought treatment, and the lack of any corroborating medical evidence.  These factors were found to contradict Plaintiff's complaints of constant, debilitating leg pain.  R. at 14.  The ALJ combined limitations attributed to Plaintiff's heart condition to Dr. McCarthy's osteopathic assessment and concluded Plaintiff was limited to sedentary work.  While this prevents Plaintiff from returning to his past work, the VE's testimony established there are other jobs in the national economy Plaintiff can perform.

## II.  DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole.  Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion.  [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion."  Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted).  Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision.  Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)).  Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might

4

accept as adequate to support a conclusion.  Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

Plaintiff's arguments all relate to the common contention that the ALJ failed to properly ascertain Plaintiff's residual functional capacity.  Plaintiff contends the aLJ failed to consider Plaintiff's testimony about lower leg pain and the effects of his heart problems.  To the contrary, the Record establishes these facts were considered – it is more accurate to say the ALJ did not fully credit Plaintiff's testimony.

The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that she experiences.  House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994).  The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced.  The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints.  The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1.  The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal

5

observations.  Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322.

While current regulations incorporate these considerations, the Eighth Circuit has declared that the "preferred practice" is to cite Polaski.  Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007).  In this case, there is ample justification for the ALJ's decision to not fully credit Plaintiff's testimony.  Medical assessments of Plaintiff's leg and knee revealed no basis for the pain he described, and he was treated conservatively.  The frequency and nature of Plaintiff's complaints to doctors was not consistent with his testimony about the frequency and nature of his problems.  Plaintiff's activities are also inconsistent with the limitations he described, particularly given his claimed ability to walk one and a half miles per day.

The ALJ was also entitled to discount Plaintiff's subjective complaints about the effects of his heart problems.  Again, his testimony was not consistent with his reports to doctors.  In particular, the medical evidence established Plaintiff's problems were effectively controlled with medication – that is, when Plaintiff chose to take his medication as prescribed.  Plaintiff's failure to follow doctor's orders also justified the ALJ's findings: a person suffering serious and debilitating problems would be expected to follow a doctor's instructions, and the failure to do so is some evidence demonstrating the complaints are not as serious as alleged.

Plaintiff also presents generalized complaints about the RFC assessment. However, Plaintiff does not suggest any limitations that should have been incorporated in the RFC apart from his own testimony.  There is no suggestion from Plaintiff (and no suggestion found by the Court) indicating some medical assessment that should have been incorporated but was not.  To the contrary, none of Plaintiff's treating physicians suggest Plaintiff is limited to a greater extent than the ALJ's RFC finding.  Plaintiff suggests the ALJ relied too much on Dr. McCarthy's report, but the flaw in this argument is that the ALJ found Plaintiff *more restricted* than Dr. McCarthy indicated.

There is no denying Plaintiff has suffered heart problems.  There is no denying the history of heart problems imposes restrictions on Plaintiff's residual functional

capacity and that he cannot perform his prior work.  However, the Record amply supports the ALJ's conclusion that (1) Plaintiff is not as restricted as Plaintiff claims and (2) Plaintiff retains the functional capacity to perform sedentary work.

## III.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is affirmed.


IT IS SO ORDERED.


/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: February 15, 2012          UNITED STATES DISTRICT COURT

7